IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) CR 16-168 |
| v. | ) CV 17-1400 |
| | ) |
| EDWARD PETERS | |

**OPINION AND ORDER**

**SYNOPSIS**

In this action, a criminal complaint, filed on May 12, 2015, charged Defendant with violating 18 U.S.C. § 922(g)(1). On May 22, 2015, that proceeding was transferred to Docket No. 15-109. Then, on August 16, 2016, at the current docket number, the Government filed an information charging Defendant with one Count of violating 18 U.S.C. § 922(j). At a hearing held that same date, Defendant waived indictment, pleaded guilty to violating Section 922(j), and was sentenced to a ten-year term of imprisonment pursuant to the parties' plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). At the hearing, the Government moved to dismiss the charge at Docket No. 15-109, and the Court granted the Motion. Defendant appealed. On March 21, 2017, the Court of Appeals granted the Government's Motion to enforce an appellate waiver in Defendant's plea agreement.[1]

Before the Court is Defendant's Motion to Vacate pursuant to 28 U.S.C. § 2255, for which he was provided notice pursuant to United States v. Miller, 197 F. 3d 644 (3d Cir. 1999). Following Miller notice, Defendant elected to have his Motion ruled on as filed. His Motion alleges ineffective assistance of plea counsel, in failing to advise Defendant, during plea

---

[1] Judge McVerry presided over Defendant's plea and sentence. The matter was transferred to Judge Cercone in 2017, and then to my docket on May 31, 2018.

1

negotiations, that he would be able to challenge his armed career criminal status, and for failing to properly deal with an allocution error. Also before the Court is the Government's Motion for a judicial finding of waiver of attorney-client privilege. For the following reasons, Defendant's Motion will be denied, and the Government's denied as moot.

I. APPLICABLE STANDARDS

A prisoner in federal custody may move to vacate his or her sentence under 28 U.S.C. § 2255(a) if such "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is available only when 'the claimed error of law was a fundamental defect which inherently results in a complete miscarriage of justice, and ... present[s] exceptional circumstances where the need for the remedy afforded by the writ ... is apparent.'" United States v. Travillion, 759 F.3d 281, 288 (3d Cir. 2014) (quoting Davis v. United States, 417 U.S. 333, 346, 94 S. Ct. 2298, 41 L.Ed.2d 109 (1974)). A district court need not hold an evidentiary hearing on a Section 2255 motion if the motion, files, and records show conclusively that the defendant is not entitled to relief. United States v. Ritter, 93 F. App'x 402, 404 (3d Cir. 2004). Further, I have considered Defendant's submissions in accordance with well-established liberal standards applicable to pro se pleadings. In this case, an evidentiary hearing is unnecessary, and the Motion will be disposed of on the record.

II. DEFENDANT'S MOTION

Defendant challenges several aspects of counsel's conduct. Primarily, he contends that counsel was ineffective in the context of plea negotiations, because he failed to advise Defendant that he could challenge the validity of his predicate offenses, which would apply to his sentence absent a plea. In particular, Defendant asserts that counsel could have argued or advised that his predicate drug offenses were not committed on different occasions, as required by the Armed

Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e). He avers that he would not have pleaded guilty had he understood that this argument was available to him. Further, Defendant raises several additional challenges to counsel's conduct, relating to sentencing enhancements, the status of the gun involved in the crime to which he pleaded guilty, and points for cooperation.

### A. Strickland v. Washington

Defendant's Motion implicates the standards applicable to claims of ineffective assistance of counsel. In order to demonstrate ineffective assistance, a defendant must show that counsel's performance fell below "the wide range of professionally competent assistance" and also that the deficient conduct prejudiced defendant. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) (quoting Strickland, 466 U.S. at 687). Because both prongs of Strickland must be met, the failure to establish one or the other is fatal to an ineffective assistance claim. See id.

In evaluating the competency of assistance, counsel's conduct must be assessed according to the facts of the particular case, viewed as of the time of counsel's conduct. Id. at 689. A Court's review of ineffective assistance claims must be "'highly deferential,'" and must "'indulge a strong presumption' that, under the circumstances, counsel's challenged actions 'might be considered sound ... strategy.'" Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) (quoting Strickland, 466 U.S. at 689). The standard is to be judged objectively, and not subjectively according to what actually motivated counsel's decisionmaking. See Muff v. Dragovich, 310 F. App'x 522, 525 (3d Cir. 2009). It is well established that counsel is not ineffective for failing to raise weak or frivolous challenges. Indeed, "the 'process of 'winnowing out weaker arguments

3

… and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy.'" Sistrunk v. Vaughn, 96 F.3d 666, 670 (quoting Smith v. Murray, 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986)). "It is [] only the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989).

Under the prejudice prong, the pertinent question is "whether there is a reasonable probability that, absent the errors," the result would have been different. Id. at 695; see also United States v. Gray, 878 F.2d 702, 709-13 (3d Cir.1989). The prejudice prong of Strickland rests on "whether counsel's deficient performance renders the result of the . . . proceeding fundamentally unfair," or strips the defendant of a "substantive or procedural right to which the law entitles him." Id. at 844. To demonstrate prejudice, a claimant must show that counsel's errors had more than "some conceivable effect on the outcome of the proceeding." Strickland, 466 U.S. at 693.

### B. ACCA

Defendant asserts that counsel advised him that absent the plea, he could face an ACCA sentence carrying a fifteen-year minimum term of imprisonment.[2] He further asserts that he was unaware that he could have challenged the applicability of ACCA on grounds that his predicate convictions did not occur on different occasions, and that counsel was ineffective for failing to properly investigate and advise him regarding this issue. As Defendant argues, the intended ACCA charge was based on "a single spree of drug transactions that were charged in a

---

[2] 18 U.S.C. § 924(e) provides for a fifteen-year mandatory minimum sentence for an armed career criminal who violates 18 U.S.C. § 922(g)(1). Moreover, as set forth in the information filed against Defendant, Section 922(j) carries a mandatory maximum penalty of ten years of imprisonment.

single indictment and disposed of in a single proceeding." [ECF No. 17, p. 2]. Defendant states, and the Court accepts for present purposes, that he would not have pleaded guilty had he believed that he could raise this challenge.[3] In this vein, Defendant also suggests that counsel should have argued that a judge, as opposed to a jury, cannot make a "different occasions" determination.

Defendant's contention is grounded in ACCA's requirement that, to be counted as separate offenses, predicate offenses must have been "committed on occasions different from one another." 18 U.S.C. § 924(e)(1).[4] This Circuit has adopted a "separate episode test," requiring that the criminal episodes be "distinct in time." United States v. Swan, 661 F. App'x 767, 770 (3d Cir. 2016) (citing Blair, 734 F.3d at 228-29); United States v. Chatman, 487 F. App'x 769, 771 (3d Cir. 2012). Otherwise stated, "[a]s long as crimes are successive, and not simultaneous, they occur on different occasions for ACCA enhancement purposes." United States v. Bargeron, 435 F. App'x 892, 893-94 (11th Cir. 2011). Accordingly, the "critical inquiry...is whether the offenses occurred sequentially." United States v. Fuller, 453 F. 3d 274, 278 (5th Cir. 2006). Even when a defendant is arrested for and convicted of multiple offenses at one time, the offenses are distinct in time if committed days apart. See United States v. Crump, 229 F. App'x 186, 188 (3d Cir. 2007). A court may look to documents approved by Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254, 161 L. Ed. 2d 205 (2005), including charging instruments, to

---

[3] At the plea and sentencing hearing, counsel advised the Court that he had discussed the sentencing guidelines with respect to the original charges: "Judge, we've described [the advisory sentencing guidelines] generically. With respect to this particular – we have discussed them with respect to the original indictment in this case. We have not gone at length here – because of the nature of the plea agreement for ten years, we have not discussed them in depth with respect to this particular information…." [ECF No. 14, p. 16].

[4] Defendant argues that counsel should have relied on Garrus v. Secretary of the Pa. Dep't, 694 F. 3d 394 (3d Cir. 2012), to argue that a judge cannot make a "different occasions" determination. In United States v. Chatman, 487 F. App'x 769, 772 (3d Cir. 2012), the defendant contested the legal significance of the dates of his prior offense conduct, but not the dates themselves. The Court of Appeals stated that even if the "different occasions" inquiry implicated Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), the context left only a legal conclusion, amenable to resolution by the court rather than the jury. Chatman, 487 F. App'x at 772.

5

resolve a "different occasions" question.  United States v. Wilson, No. 6-97, 2017 U.S. Dist. LEXIS 140262, at *8 (W.D. Pa. Aug. 31, 2017) (collecting cases).

Here, the Government has submitted an information filed in the Court of Common Pleas of Allegheny County, Criminal Action No. CC201107969, charging Defendant with various drug offenses.  The information charges that Defendant violated 35 P.S. § 780-113(a)(30) on three occasions: March 17, 2011, March 31, 2011, and May 27, 2011.  The information specifically charged the delivery of and possession with intent to deliver heroin on each occasion.  The Government has also submitted a state court document reflecting that Defendant pleaded guilty to these charges on February 16, 2012, in open court and with counsel.  The pre-plea Presentence Investigation Report filed at Docket No. 15-109 stated that Defendant would be deemed an armed career criminal based on these particular offenses.  Defendant does not dispute the validity of the state court convictions, or the Shepard documents denoting those convictions.  A violation of Section 780-113(a)(30) involving heroin has been found to be a "serious drug offense" for ACCA purposes.  See, e.g., United States v. Wiltshire, No. 17-2333, 2018 U.S. App. LEXIS 15195, at *2 (3d Cir. June 6, 2018) (non-precedential); United States v. Thomas, No. 03-98, 2016 U.S. Dist. LEXIS 176717, at *6 (W.D. Pa. Dec. 21, 2016).  Under these circumstances, counsel was not ineffective with respect to the "separate occasions" question, and there is no reasonable probability that the outcome would have differed had he acted otherwise.

Defendant also suggests that counsel was ineffective when he failed to rely on Garrus v. Secretary of the Pa. Dep't, 694 F. 3d 394 (3d Cir. 2012), to argue that a judge cannot make a "different occasions" determination pursuant to Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000).  Even if Apprendi applied to the "different occasions" analysis, the sentencing Court made no ACCA-related findings in this case.  Defendant's plea

6

agreement, and the dismissal of the Section 922(g) charge, removed the issue from judicial consideration. Further, Defendant does not challenge the validity of his predicate offenses, or the dates reflected in the charging document. Instead, he challenges only the potential legal question that they might qualify as separate offenses. Such a question is properly determined by a judge. See United States v. Chatman, 487 F. App'x 769, 772 (3d Cir. 2012). Counsel would have had no reason or occasion to raise an Apprendi-type argument in this case, and no prejudice inhered.

### C. Allocution

Next, Defendant suggests that counsel was ineffective when he neglected to advise him of his right to allocution, or to object to the trial court's failure to allocute.

Federal Rule of Criminal Procedure 32 requires a court, before imposing sentence, to "address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence." In United States v. Adams, 252 F.3d 276, 277-78 (3d Cir. 2001), our Court of Appeals considered whether the trial court's request for allocution, directed towards counsel rather than defendant personally, warranted resentencing. Finding in the affirmative, the Court observed that on direct appeal, an allocution defect is subject to plain error analysis, which requires that an error "affects substantial rights." Id. at 284-85. It further noted that to affect substantial rights, a plain error must have been "prejudicial" – that is, "it must have affected the outcome of the district court proceedings." Id. at 285.[5] Due to both the nature of the right and the difficulty of showing prejudice if it is violated, the Court of Appeals stated that it

---

[5] The Court of Appeals applied a three-prong standard: the District Court must have committed error, which is plain, that affects substantial rights. Adams, 252 F. 3d at 285 (citing United States v. Olano, 507 U.S. 725, 123 L. Ed. 2d 508, 113 S. Ct. 1770 (1993)). If all three prongs are met, the Court may exercise its discretion to correct the error if the error "seriously affects the fairness, integrity or public reputation of judicial proceedings." Id. at 288 (quoting Olano, 507 U.S. at 736).

7

should "presume prejudice when a defendant shows a violation of the right and the opportunity for such a violation to have played a role in the district court's sentencing decision." Id. at 287.[6] Id. at 288. Subsequently, in United States v. Paladino, 769 F.3d 197, 203 (3d Cir. 2014), on plain error review, the Court of Appeals indicated that the presumption of prejudice would apply in the face of a plea agreement pursuant to Rule 11(c)(1)(C). The Court reasoned that even in the Rule 11(c)(1)(C) context, the judge "still retains the discretion to reject" the parties' agreement; allocution, in other words, could play a role in the court's sentencing decision despite the parties' agreement.[7] Id.

Although clearly describing the proper approach to an allocution error under appellate review standards, our Court of Appeals has not opined regarding how, or whether, the presumption of prejudice applies to a collateral challenge based on ineffective assistance of counsel. The Court of Appeals for the Eleventh Circuit, in Gordon v. United States, 518 F.3d 1291 (11th Cir. 2008), directly addressed this issue. In so doing, the Court concluded that counsel's failure to object to the absence of allocution is not ineffective assistance per se, and that a presumption of prejudice should not inhere. Id. at 1299-1300. The Court reasoned that not every failure to object to a plain error will satisfy Strickland's "deficient performance" prong; and the distinctions between direct appeal and collateral attack render a presumption of prejudice, in the ineffective assistance context, inappropriate. Id. at 1299-1301. Further, the

---

[6]In Adams, having found both plain error and prejudice, the Court further determined that the allocution error required correction. Adams, 252 F. 2d at 288. The Court so found "in this case" – the one before it – and did not expressly state that every plain allocution error per se requires correction. Id. The Court of Appeals for the Fifth Circuit has determined that a denial of allocution does not necessarily "seriously affect the fairness, integrity, or public reputation of judicial proceedings." Instead, even in light of a presumption of prejudice, further inquiry is required to determine whether an allocution error must be corrected. United States v. Reyna, 358 F.3d 344, 352 (5th Cir. 2004). The Fifth Circuit described its approach as a departure from the Third Circuit's in Adams. Id.
[7] In contrast, the Court of Appeals for the Tenth Circuit has adopted the approach, in the direct appeal setting, that an allocution error is not prejudicial if a defendant received the lowest possible sentence, such as in an 11(c)(1)(C) setting, and remand for resentencing would be fruitless. See, e.g., United States v. Bustamante-Conchas, 850 F.3d 1130, 1140 (10th Cir. 2017) (collecting cases).

Court observed the Supreme Court's pronouncement that the failure to follow Rule 32 is not a fundamental defect amenable to collateral attack, and that such a failure permits collateral relief only when it causes prejudice. Id. at 1300-01 (citing Hill v. United States, 368 U.S. 424, 426, 82 S. Ct. 468, 470, 7 L. Ed. 2d 417 (1962), and Peguero v. United States, 526 U.S. 23, 27, 119 S. Ct. 961, 964, 143 L. Ed. 2d 18 (1999)). Therefore, the Eleventh Circuit concluded, applying a presumption of prejudice on collateral attack would "run afoul" of Supreme Court precedent. Id.

This Court is persuaded by the Eleventh Circuit's analysis in Gordon, and will adopt a similar approach in this case. [8] Although the plain error and Strickland standards overlap, they are not coextensive. As the Court of Appeals for the Fourth Circuit has noted, "the plain error and ineffective assistance of counsel standards do not necessarily generate identical outcomes with respect to the same alleged error." United States v. Carthorne, 878 F.3d 458, 466 (4th Cir. 2017). Moreover, as mentioned in Gordon, the Supreme Court has pronounced that a failure to allocute, without more, is not itself cognizable under Section 2255. Hill v. United States, 368 U.S. at 426. Applying a presumption of prejudice here would both bypass Strickland and do violence to the pronouncement in Hill. Moreover, the present Defendant's appeal was dismissed due to his waiver of appellate rights. Lifting the Third Circuit's plain error analysis and dropping it wholesale into today's ineffective assistance inquiry would elide Defendant's waiver, by effectively employing an appellate standard on collateral review. The presumption of prejudice, appropriate on a direct appeal of allocution error, should not be imported into a collateral challenge to counsel's failure to advise regarding or object to that error. Instead, in the

---

[8] I note that our Court of Appeals has cited Gordon, albeit solely for the proposition that Strickland's reasonableness standard is objective, and not for Gordon's discussion of allocution error. Muff v. Dragovich, 310 Fed. Appx. 522, 525 (3d Cir. 2009). Other Courts of Appeal have indicated approval of Gordon's distinction between the plain error and collateral review contexts. See, e.g., Swanson v. United States, 692 F.3d 708, 717 (7th Cir. 2012).

latter context, the well-settled and straightforward Strickland standard provides the relevant framework.

Assuming that Defendant's hearing failed to fulfill the dictates of Rule 32, Defendant cannot demonstrate that counsel's conduct with regard to allocution – whether it be a failure to object or to advise -- meets that standard. The Court interacted with Defendant throughout the subject hearing. [9] The Court explained to Defendant that the agreed-upon sentence was not binding on the Court, and that it was not required to accept the plea agreement. It further explained that if it did not accept the agreement, Defendant would have the opportunity to withdraw his guilty plea. Then, the Court stated, "The Court has no intention of rejecting the plea agreement, by the way…."[10] Under oath and on the record, Defendant repeatedly affirmed his voluntary agreement to and participation in all aspects of the proceeding. The record makes clear that Defendant was not, at any time or by any person, affirmatively prevented from speaking to the Court. He does not suggest that he was instructed or felt compelled to limit his responses to the Court. There is no suggestion that the plea colloquy was deficient. Defendant does not identify what he would have said upon allocution, or indicate that he would have offered specific information that might have impacted his sentence; indeed, he does not assert that he would have said anything at all. In addition, the plea agreement provided that the Government would move for dismissal of the indictment filed at Docket No. CR 15-109, without prejudice to its reinstatement should the guilty plea in the instant case be withdrawn. Had the Court rejected the plea agreement, that charge would have remained pending. Under all of these

---

[9] This is unlike the hearing at issue in Paladino, in which the Court at no point addressed or interacted with defendant directly. Transcript of Revocation Hearing, W.D. Pa. Docket No. 4-172, ECF No. 132.
[10] In the 11(c)(1)(C) context, a court "retains absolute discretion whether to accept a plea agreement, but once it does it is bound at sentencing to give effect to the parties agreement as to the appropriate term of imprisonment." Freeman v. United States, 564 U.S. 522, 131 S. Ct. 2685, 2682, 180 L. Ed. 2d 519 (2011).

circumstances, prejudice resulting from counsel's failure to object is far too speculative to pass muster under Strickland.

Further, even if a presumption of prejudice applied, Defendant would be required to meet the first prong of Strickland, on which neither Adams nor Paladino bears. Defendant has not demonstrated that counsel's performance fell below applicable objective standards. Counsel could have had reasonable and legitimate strategic reasons not to address allocution immediately prior to the Court's pronouncing sentence. Having secured the dismissal of an indictment with likely ACCA ramifications, and because the Court otherwise interacted with Defendant and indicated its intention to accept the plea agreement, counsel may have perceived no benefit – and possibly, harm -- in ensuring that the Court expressly address his client and invite him to speak prior to sentencing. Defendant has proposed no facts that would overcome the presumption that counsel's performance might be considered sound strategy. Defendant's allocution claim would fail on this prong of Strickland alone.

### D. Remaining Arguments

Finally, Defendant proffers a City of Pittsburgh Bureau of Police Gun Task Force Firearms Report ("Report") completed on May 11, 2015 and relating to the instant offense. Although a pertinent portion of the Report as filed with this Court is obscured and thus unreadable, the Court accepts, for present purposes, that the Report does not reflect that the gun had been stolen. Defendant asserts that counsel advised him to admit to possessing a stolen firearm, to avoid the ACCA charge, "even if [Defendant] was unaware that the weapon might not have been stolen." In response, the Government points to the plea colloquy, and the fact that Defendant "obviously" could not legally purchase a firearm, to establish that the firearm had

11

been stolen. It further submits that the mere fact that the weapon had not yet been reported stolen at the time of the Report does not mean that it had not been stolen.

While the Government's response lacks substance, it is true that the Report alone does not necessarily reflect the extent of the Government's evidence. Moreover, the remainder of the record bears on this issue. "[T]he representations of the defendant…as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." Blackledge v. Allison, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). "[A]bsent clear and convincing evidence to the contrary, a court must presume the veracity of a defendant's statements made while under oath in open court." Morris v. United States, No. 04-1570, 2008 U.S. Dist. LEXIS 31295, at *14 (D. Del. Apr. 16, 2008). Consistent with these principles is the "fundamental interest in the finality of guilty pleas." Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

> Here, at Defendant's hearing, the following exchanges occurred:
>
> Court: [Government counsel], will you now please place on the record the elements of the offense to which Mr. Peters is pleading guilty so that it will be clear to him and on the record that he understands the nature of the offense to which he may be entering a plea of guilty.
>
> Government counsel: …There are three elements. [T]he defendant knowingly possessed the firearm …described in the information…Two, that at the time the defendant possessed it, the firearm was stolen and the defendant knew or had reasonable cause to believe that the firearm was stolen.
>
> Court: Mr. Peters, do you understand that before you could be found guilty of the offense to which you're entering a plea of guilty, the government would have to prove all of the elements of the crime just described beyond a reasonable doubt?
>
> Defendant: Yes, sir.
>
> Court:…[W]hat, in summary, would be the government's evidence as to this charge?

> Government counsel: …[W]e would also present evidence that prior to May 11, 2015 [when Defendant was stopped with the firearm], the firearm, had, in fact, been stolen from its true owner of the property.
>
> Court:...Mr. Peters…do you agree with the prosecution's summary of what you did?
>
> Defendant: Yes, sir.
>
> Court: Are there any additions or corrections you wish to make to the record?
>
> Defendant: No, sir.
> ***
> Court: Mr. Peters, has anyone forced you in any way to enter a guilty plea to this charge?
>
> Defendant: No, sir.
> ***
> Court: So, if you enter a plea of guilty, will it be your own knowing, free, and voluntary act?
>
> Defendant: Yes, sir.
>
> Court: Do you understand everything that I've discussed with you today?
>
> Defendant: Yes, sir.
> ***
> Court: Have you answered truthfully to all the questions I've asked you today?
>
> Defendant: Yes, sir.
> ***
> Court: Mr. Peters, you're charged by the United States of America…with possession of a stolen firearm….The question recurs, how do you plead to that charge?
>
> Defendant: Guilty. It's already signed.

ECF No. 14, pp. 24-28.

Thus, Defendant affirmed his understanding that the Government would have to prove not only that the weapon was stolen, but that Defendant knew or should have known that it was stolen. The Government further stated its intention to present evidence that the firearm had in fact been stolen prior to the date of Defendant's offense. Defendant declined to make any additions or corrections to the record when asked if he wished to do so. All of this occurred prior

13

to Defendant stating that he pleads guilty.  The mere existence of the Report does not undermine the Government's statement that it had evidence that the gun had been stolen, or that Defendant acknowledged the existence of that proof and the requirement that the Government prove his mens rea regarding the firearm's status.  Defendant does not now allege that the Government's statement regarding its proof was inaccurate or misleading.  Along with those acknowledgements, Defendant affirmed the truthfulness of all of his prior answers and the voluntariness of his plea.

In light of all of these circumstances, neither prong of Strickland is met.  Indeed, it is unclear what failure Defendant ascribes to counsel.  Defendant does not suggest that his counsel failed to investigate the Government's proof of theft; it appears, instead, that Defendant did not realize that the Report existed.  As discussed supra, counsel could have had myriad legitimate reasons for deciding not to take any action that might jeopardize the plea arrangement, and any potential prejudice regarding this issue is purely speculative.

Defendant raises additional challenges, which can be dealt with summarily.  For example, he suggests that he was entitled to a three-point reduction for cooperation.  As the Government states, the plea agreement called for a two-level reduction for acceptance of responsibility, and Defendant pleaded guilty on the eve of trial.  Mondragon Garcia v. United States, 134 S. Ct. 1539 (2014), to which Defendant cites, does not support the proposition that he was entitled to a third point for acceptance of responsibility.  Moreover, Defendant was sentenced to an agreed-upon term, which mirrored the maximum statutory penalty for a violation of Section 922(j).  Although Defendant claims surprise at his sentence, his sworn statements at his plea proceeding, recited supra, as well as the 11(c)(1)(C) plea agreement itself, belie his challenges.  Defendant

has not established, in any of the instances urged, that counsel was ineffective under Strickland's standards.

### III.  GOVERNMENT'S MOTION

The Government's Motion for Judicial Finding of Waiver of Attorney-Client Privilege asserts as follows: "Based on discussions with Peters' counsel, the government has reason to believe that not only did Peters' counsel investigate whether Peters was subject to the fifteen-year mandatory minimum, counsel did an extensive investigation and provided Peters with the fruits of that investigation." The Government filed its Motion because counsel was unwilling to provide his research absent the requested judicial finding. In light of the Court's disposition of Defendant's Motion, the Government's Motion is moot.

### IV.  CERTIFICATE OF APPEALABILITY

Under 28 U.S.C.§ 2253(c)(2), a "certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right." For the reasons stated above, Defendant has not made such a showing.[11] Therefore, a certificate of appealability will not issue.

---

[11] If today's ruling had rested solely on the lack of prejudice due to allocution error, this Court might have been inclined to issue a certificate of appealability on that question. Defendant's claim in that regard, however, has been denied on the alternative grounds of Strickland's first prong. Thus, the question of prejudice is not dispositive, and a certificate of appealability is not warranted.

## CONCLUSION

In conclusion, Defendant has not established a fundamental defect which inherently results in a complete miscarriage of justice, and his Motion to Vacate will be denied. The Government's Motion will be denied as moot. No certificate of appealability shall issue. An appropriate Order follows.

Dated: August 16, 2018

BY THE COURT:

*Donetta F. Ambrose*

_____

Donetta W. Ambrose

Senior Judge, U.S. District Court

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES | ) |
| | ) CR 16-168 |
| v. | ) CV 17-1400 |
| | ) |
| EDWARD PETERS | |

ORDER

AND NOW, this 16th day of August, 2018, it is hereby ORDERED, ADJUDGED, and DECREED that Defendant's Motion to Vacate is DENIED. No certificate of appealability shall issue. Further, the Government's Motion for Judicial Finding is DENIED as moot.

BY THE COURT:

_Donetta F. Ambrose_

Donetta W. Ambrose

Senior Judge, U.S. District Court